1
2
3
4
5
6

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

LESLIE FRY,

Case No. C07-0817MJP

8

Plaintiff,

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

9

v.

10
11
12

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS,
DISTRICT LODGE 751, AFL-CIO, and THE
BOEING COMPANY, a Washington corporation,

13

Defendants.

14

15      This matter comes before the Court on Defendant International Association of Machinists

16   and Aerospace Workers, District Lodge 751, AFL-CIO's motion for summary judgment. (Dkt.

17   No. 34.)  Plaintiff Leslie Fry opposes the motion. (Dkt. No. 40.)  Having considered the motion

18   and response, Defendant's reply (Dkt. No. 43), all documents submitted in support thereof and

19   the balance of the record, the Court GRANTS Defendant's motion for summary judgment.

20                                              **Background**

21      This case arises from Plaintiff Leslie Fry's termination from The Boeing Company

22   ("Boeing").  Ms. Fry is a member of and was represented in the discipline and termination process

23   by Defendant International Association of Machinists and Aerospace Workers, District Lodge

24   751, AFL-CIO ("the Union").  Although Ms. Fry sued both the Union and Boeing, she has,

25   during the course of this litigation, settled her dispute with Boeing. (See Dkt. No. 36.)  Only her

26   claim against the Union remains.

27

ORDER — 1

1    The following undisputed facts relate to Plaintiff's progressive discipline and eventual

2    dismissal from Boeing.  Before her termination in 2006, Plaintiff had worked at Boeing for

3    eighteen years. (Fry Decl., p. 1.)  In 2004, Ms. Fry developed a personal relationship with a co-

4    worker, David May, that turned violent in 2005. (Id.)  On May 11, 2005, Ms. Fry and Mr. May

5    got into a fight at work that involved food allegedly hitting Mr. May. (Id. at 2.)  Ms. Fry was

6    suspended for eleven days, but was eventually paid for the days she was on suspension. (Id.)  The

7    incident resulted in a written warning (also known as an "Employee Corrective Action Memo" or

8    "CAM") issued to Ms. Fry in July 2005. (Id.; see also Baumgardner Decl. ¶ 2; Detwiler Decl., Ex.

9    B.)  Ms. Fry and Mr. May's relationship continued to deteriorate and they both obtained

10   restraining orders against one another. (Fry Decl., pp. 2-3.)  Boeing required both of them to sign

11   Restraining Order Agreements. (Id.)  Ms. Fry's Agreement required her to, among other things,

12   stay out of a particular parking lot. (Id.)  Nevertheless, on at least one occasion, Ms. Fry parked

13   in that prohibited parking lot. (Id.)  On January 20, 2006, Boeing issued a second CAM and

14   suspended Ms. Fry for one day without pay for violating the Restraining Order Agreement. (Id.;

15   see also Detwiler Decl., Ex. C.)

16   Shortly thereafter, Ms. Fry had a conversation with Boeing investigator Avon Pelsang in

17   which Ms. Fry apparently told Ms. Pelsang she was going to "lose it."[1]  She also had a

18   conversation with several co-workers in which she stated that she could understand why people

19   sometimes "go postal."[2] (Fry Decl., p. 4.)  Six days after her conversation with Ms. Pelsang, Ms.

20   Fry was told that she was being given time off without pay for "Failure to comply with the

---

[1]    Ms. Fry states in her declaration that she does not remember making this comment, but acknowledges that in all likelihood she may have. (Fry Decl., p. 4.) Defendant offers the declaration of Yvonne Marx, attached to which are Union Representative Roy Baumgardner's notes that indicate Ms. Fry twice told the investigator she was "about to lose it." (Detwiler Decl., Ex. E.)

[2]    This statement was made in the context of the co-workers discussing a recent shooting by a Postal Service employee. (Fry Decl., p. 4.) It is disputed whether Ms. Fry also stated at that time that the victim "probably deserved it."

ORDER — 2

1   Expected Conduct Standards for all Boeing Employees, specifically to [t]reat others and expect to

2   be treated with respect, dignity, and trust." (<u>Id.</u>, p. 5; Detwiler Decl., Ex. C.)  Given the two

3   previous incidents, this was her third discipline for this category of conduct.  Ms. Fry requested

4   that Ray Baumgardner, a Union business representative, assist her regarding the suspension.

5   (Baumgardner Decl. ¶ 3.)  Mr. Baumgardner agreed. (<u>Id.</u>)  Mr. Baumgardner conducted his own

6   investigation and maintained contact with Boeing regarding the suspension. (<u>Id.</u> ¶¶ 4-14.)  In

7   connection with this investigatory suspension, Ms. Fry was referred for a psychiatric threat-of-

8   violence evaluation. (Fry Decl., p. 5; Supp. Baumgardner Decl. ¶ 1.)  After the evaluation, Ms.

9   Fry communicated to Mr. Baumgardner that she had received a "positive" evaluation from the

10  psychiatrist. (Fry Decl., p. 5.)  Mr. Baumgardner never obtained a copy of the evaluation during

11  his investigation.

12          During the investigation, Mr. Baumgardner discovered that in violation of the operative

13  Collective Bargaining Agreement, Boeing failed to give Ms. Fry any suspension paperwork. (Fry

14  Decl., p. 5; Baumgardner Decl. ¶ 7.)  He filed a grievance on her behalf regarding the failure to

15  give her the appropriate paperwork.  Boeing did then provide her with copies of the paperwork.

16          On May 23, Boeing informed Mr. Baumgardner that it had decided to terminate Ms. Fry.

17  (Baumgardner Decl. ¶ 15.)  The termination CAM stated:

18          You engaged in inappropriate and intimidating behaviors directed toward
            management and your coworkers.  As well, you made inappropriate comments to
19          coworkers that caused concern regarding a potential threat.  Your actions are
            unacceptable and will not be tolerated.
20

21  (Detwiler Decl., Ex. C.)  Mr. Baumgardner investigated the termination decision and concluded

22  that, given Ms. Fry's disciplinary history, her violent history with Mr. May, the nature of the

23  claims against her, and the progressive discipline used, that termination was not too severe a

24  sanction. (Baumgardner Decl. ¶ 17.)  Ms. Fry states in her declaration that Mr. Baumgardner was

25  difficult to meet with during this investigative process. (Fry Decl., p. 6.)  Although he concluded

26  that there was insufficient merit to justify further Union action, he asked Boeing to reconsider her

27

termination. (Id. ¶ 18.)  Boeing declined to reconsider its decision and on July 25, 2006, Mr. Baumgardner sent Ms. Fry a letter informing her of his decision not to file a grievance contesting her termination. (Id. ¶ 21.)  Through her lawyer, Ms. Fry appealed his decision; the appeal was denied in a letter dated September 14, 2006. (Detwiler Decl., Ex. D.)

In February 2007, Mr. Baumgardner obtained a $7,017.60 settlement offer for Ms. Fry for the failure to give her the appropriate suspension paperwork. (Baumgardner Decl. ¶ 24.)  Ms. Fry refused to accept the settlement offer as written because it apparently required her to waive any claim against Boeing. (Fry Decl., p. 6.)  Boeing then offered Ms. Fry the opportunity to re-write the settlement letter to her satisfaction, but she referred them to her attorney. (Id.; see also Baumgardner Decl. ¶ 25.)  No settlement was ever reached and the Union decided not to proceed to arbitration on the grievance. (Baumgardner Decl. ¶ 26.)  Ms. Fry did not appeal the Union's decision to withdraw the grievance.

On March 15, 2007, Plaintiff filed suit against the Union, alleging breach of the duty of fair representation, and against Boeing, alleging age, race, and gender discrimination, violation of the Family Medical Leave Act, wrongful discharge, and failure to accommodate. (Dkt. No. 2.)  As mentioned, Plaintiff's claims against Boeing have been voluntarily dismissed.  The Union moves for summary judgment on Plaintiff's duty of fair representation claim.

**Discussion**

**I.     Summary Judgment Standard**

Summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of

1   evidence to support the non-moving party's case. Id. at 325.  If the moving party meets its initial

2   burden, the opposing party must then set forth specific facts showing that there is some genuine

3   issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, 477 U.S. 242, 250

4   (1986).

5   **II.    Threshold Issues**

6          As a preliminary matter, Plaintiff's opposition contains no arguments regarding the

7   Union's decision not to proceed to arbitration on the paperwork issue or the decision not to file

8   grievances regarding the first two CAMs.  Thus, Plaintiff has limited her claim to the Union's

9   failure to grieve her termination.  The Union raises several threshold issues that require summary

10  judgment dismissal of that claim.

11         **A.      Failure to Allege that Boeing Breached the CBA**

12         Plaintiff's duty of fair representation claim fails as a matter of law because Plaintiff never

13  alleged in her complaint that Boeing breached the Collective Bargaining Agreement ("CBA")

14  when it terminated her.  An employer's breach of the collective bargaining agreement is a

15  necessary element of any claim against the union for breach of the duty of fair representation.

16  DelCostello v. Teamsters, 462 U.S. 151, 164-65 (1983) ("To prevail against either the company

17  or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the

18  contract but must also carry the burden of demonstrating breach of duty by the Union."); see also

19  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 988 (9th Cir. 2007) (noting that both clams

20  must be alleged and proved to prevail); Bliesner v. Commun. Workers of Am., 464 F.3d 910,

21  913-14 (9th Cir. 2006) ("Whether the defendant is the union or the employer, the required proof

22  is the same: The plaintiff must show that there has been both a breach of the duty of fair

23  representation and a breach of the CBA."); Skillsky v. Lucky Stores, Inc., 893 F.2d 1088, 1095

24  (9th Cir. 1990) ("To establish a claim for a breach of the duty of fair representation, [the plaintiff]

25  must show: (1) the discharge was in violation of the collective bargaining agreement, and (2) the

26  union breached its duty by more than a mere error of judgment."); Blount v. Local Union 25, 984

27

1    F.2d 244, 248 n.6 (8th Cir. 1993) ("That [the employer] breached the bargaining agreement is

2    necessarily an element of proof the [employees] must establish to prevail against [the union].").

3    Both elements must be alleged because a union has no obligation to prosecute a grievance that has

4    no merit. <u>See</u> <u>Blount</u>, 984 F.2d at 248 n.6.

5         Plaintiff does not dispute that her complaint contains no allegation that Boeing breached a

6    provision of the CBA, nor does she dispute that such a showing is necessary to her claim. Plaintiff

7    simply declares that there is no authority for dismissal on this basis and that Boeing violated

8    Article 19 of the CBA.[3] (Plf.'s Opp. at 6.)  Ms. Fry may not amend her complaint to add a claim

9    based on Article 19 of the CBA through argument in response to a motion for summary judgment.

10   <u>See</u> <u>Wasco Prods., Inc. v. Southwall Techs., Inc.</u>, 435 F.3d 989, 992 (9th Cir. 2006) ("The

11   necessary factual averments are required with respect to each material element of the underlying

12   legal theory. . . . Simply put, summary judgment is not a procedural second chance to flesh out

13   inadequate pleadings.") (citation omitted).  And as discussed above, the case law is clear that a

14   viable breach of the duty of fair representation claim depends on a showing that the employer

15   violated the CBA.  Because she never made that allegation, Plaintiff's duty of fair representation

16   claim fails as a matter of law.

17   **B.     Statute of Limitations**

18        Ms. Fry's claim is also barred by the applicable six-month statute of limitations.  Roy

19   Baumgardner sent Ms. Fry a letter on July 25, 2006, informing her that he decided not to grieve

20   her termination. (Detwiler Decl., Ex. D.)  On September 14, 2006, the Union sent Ms. Fry a letter

21   denying her appeal of Mr. Baumgardner's decision. (<u>Id.</u>)  Plaintiff filed her law suit on March 15,

22   2007, more than seven months after Mr. Baumgardner informed her that he would not pursue a

23   grievance, and six months and a day after the Union informed her that her appeal of that decision

24   was denied.

25

26        [3]     Article 19 limits termination of union members to termination for "just cause." Plaintiff

27   argues that Boeing did not have just cause to terminate her. (Plf.'s Opp. at 10.)

ORDER — 6

1       Fair representation claims are limited by a six month statute of limitations. <u>DelCostello</u>,

2 462 U.S. at 169.  The six-month limitations period "begins to run when an employee knows or

3 should know of the alleged breach of duty of fair representation by a union." <u>Zuniga v. United</u>

4 <u>Can Co.</u>, 812 F.2d 443, 449 (9th Cir. 1987) (citation omitted).  In <u>Zuniga</u>, the Court concluded

5 that the cause of action accrued on the date the union sent plaintiff a grievance denial letter, not

6 the date the union denied the plaintiff's appeal. <u>Id.</u>  Although <u>Zuniga</u> did not squarely address

7 whether the appeal process tolls the statute of limitations, the outcome in <u>Zuniga</u> strongly

8 indicates that it does not.  Thus, here, the limitations period runs from the date Mr. Baumgardner

9 sent Plaintiff the letter informing her that he would not pursue a grievance regarding her

10 termination.  Plaintiff points to language in <u>Zuniga</u> suggesting that the accrual date remains an

11 "open" question in the Ninth Circuit. <u>See id.</u> ("The question remains open in this circuit 'whether

12 accrual occurs when the employee learns, or should have learned, that his dispute was finally

13 resolved, . . . or whether accrual occurs when the employee learns, or should have learned, that

14 the union may have violated its duty of fair representation.'") (quoting <u>Galindo v. Stoody Co.</u>,

15 793 F.2d 1502, 1509 (9th Cir. 1986).  But Plaintiff points to no post-<u>Zuniga</u> authority suggesting

16 that the appeal process tolls the limitations period, and the outcome in <u>Zuniga</u> suggests it does not

17 do so.

18       Even if the appeal process did toll the limitations period, Plaintiff's complaint was still late.

19 The appeal denial letter was sent on September 14 and Ms. Fry's complaint was filed <u>six months</u>

20 <u>and one day</u> later.  Plaintiff does not dispute that the limitations period runs from the day the letter

21 was sent. <u>See Zuniga</u>, 812 F.3d at 449 (holding that claim accrued on "the date on which the

22 Secretary-Treasurer of Local 588 <u>sent</u> his letter advising [the plaintiff] that the union would not

23 further pursue the grievance") (emphasis added).  Plaintiff argues, however, that Federal Rule of

24 Civil Procedure 6(d) provided her with three extra days to file her complaint.[4]  That Rule provides

25 that "[w]hen a party may or must act within a specified time after service and service is made

26  

27        [4]     Plaintiff cites to Former Rule 6(e), which provides the same 3-day leeway.

ORDER — 7

1   under Rule 5(b)(2)(C), (D), (E), or (F) [(delivery by mail or other means)], 3 days are added after

2   the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d). But by its own plain

3   terms, this rule only applies to <u>parties</u> and only applies when <u>service is made</u> under the Federal

4   Rules. Ms. Fry was not a "party" when the Union mailed the letter informing her of the denial of

5   her appeal, and the Union was not "serving" her under Federal Rule 5(b)(2)(C) when it sent her

6   that letter. Although the Ninth Circuit has not decided the issue, "[the] prevailing view in the case

7   law is that Rule 6([d]) does not apply to statutes of limitation." <u>Berman v. U.S.</u>, 264 F.3d 16, 19

8   (1st Cir. 2001); <u>see also</u> <u>Clay v. U.S.</u>, 199 F.3d 876, 880 (6th Cir. 1999). Because both the

9   Baumgardner grievance denial letter and the Union appeal denial letter were sent outside the

10  limitations period, Plaintiff's claim is barred by the six-month statute of limitations.

11  **III.    Plaintiff Fails to Raise a Material Issue Regarding Whether the Union Breached its
           Duty of Fair Representation**

12

13          Even if the Court considered the merits of Plaintiff's duty of fair representation claim, it

14  would conclude that she cannot survive summary judgment on that claim. A union violates its

15  duty of fair representation only when its conduct is "arbitrary, discriminatory, or in bad faith." <u>Air</u>

16  <u>Line Pilots Ass'n Int'l v. O'Neill</u>, 499 U.S. 65, 67 (1991). Plaintiff does not argue that the

17  Union's conduct was discriminatory or in bad faith. She only argues that the Union acted

18  arbitrarily when it refused to grieve her termination "when her employment was terminated

19  because of a perceived threat of violence and Mr. Baumgardner had personal knowledge that the

20  Plaintiff had completed a psychological evaluation on this very issue and refused to obtain and

21  utilize this information which demonstrated the baseless nature of the alleged threat of violence."

22  (Plf.'s Opp. at 7-8.) Plaintiff suggests Mr. Baumgardner should have obtained this "mitigating"

23  evidence and used it to argue against her termination to Boeing.

24          The major fault in Plaintiff's argument is the assumption underlying it — namely, that she

25  was terminated because of a perceived threat of violence. Ms. Fry not terminated because of

26  a perceived threat of violence, but because she had repeatedly engaged in inappropriate conduct.

27

As her termination CAM stated:

> You engaged in inappropriate and intimidating behaviors directed toward management and your coworkers.  As well, you made inappropriate comments to coworkers that caused concern regarding a potential threat.  Your actions are unacceptable and will not be tolerated.

(Detwiler Decl., Ex. C.)  Thus, whether or not the psychiatric evaluation showed that she was a threat to others is irrelevant because she was not terminated for any such perceived threat.

Ms. Fry has raised no material issues of fact regarding the adequacy of the Union's investigation and decision not to grieve her termination.  "A union's duty of fair representation includes the duty to perform some minimal investigation, the thoroughness of which varies with the circumstances of the particular case." Evangelista v. Inlandboatmen's Union of Pac., 777 F.2d 1390, 1395 (9th Cir. 1985). "The union must exercise special care in handling a grievance which concerns a discharge, because it is the most serious sanction an employer can impose." Id. (citing Tenorio v. NLRB, 680 F.2d 598, 602 (9th Cir. 1982)).  "[U]nion conduct that shows an egregious disregard for the rights of union members constitutes a breach of the duty of fair representation." Tenorio, 680 F.2d at 602.  A plaintiff alleging a breach of a duty of fair representation claim must show more than mere negligence in the grievance processing. Eichelberger v. NLRB, 765 F.2d 851, 854-55 (9th Cir. 1985).   As Mr. Baumgardner explains in his declaration, he talked with Ms. Fry regarding the termination, requested documentation from Boeing regarding the termination, reviewed an 86 page security report including statements from 14 different managers and co-workers regarding her conduct, reviewed Plaintiff's written statement, attended a security meeting regarding Plaintiff, reviewed her disciplinary history, informed Boeing HR staff about the psychiatrist's evaluation, and asked Boeing to reconsider its decision.[5] (Baumgardner Decl. ¶¶ 3-18.)  Moreover, in light of the reasons given for her

---

[5]     Plaintiff's suggestion that Mr. Baumgarder "refused to meet with her" and denied her the opportunity to explain her situation is belied by her own declaration in which she explains that she met with him at his office with her two teenage daughters. (Fry Decl. at 6.)

ORDER — 9

1  termination, the psychiatric evaluation of her threat level was not material to the investigation.  A

2  union does not have a duty to conduct extensive or additional investigation "where it would not

3  have resulted in the development of additional evidence which would have altered the union's

4  decision not to pursue the grievance." Evangelista, 777 F.2d at 1395-96.  Thus, Ms. Fry fails to

5  raise an issue of material fact regarding the adequacy of the Union's investigation; specifically, she

6  has failed to show that any additional investigation would have materially influenced the Union's

7  decision not to pursue the grievance.

8       Plaintiff relies heavily on Tenorio to support her argument that the Union acted arbitrarily

9  here.  In Tenorio, the Ninth Circuit held the union had breached its duty because (1) for no

10  legitimate reason, the union departed from its policy of interviewing all discharged employees to

11  obtain their story before processing their grievances, (2) the dispute involved potential conflicts of

12  interest for the union, and (3) other circumstances indicated that the union accepted the

13  employer's position without even attempting to hear petitioners' story. 680 F.2d at 602.  But

14  Tenorio has been limited to the circumstances in that particular case, Eichelberger, 765 F.2d at

15  858 n.10, and Plaintiff's circumstances do not align with those in that case.  Tenorio is therefore

16  inapposite.

17       It is worth noting that Plaintiff's assertion that the psychiatrist's evaluation was "positive"

18  is debatable.  The evaluator concluded that Ms. Fry's acute risk of violent behavior in the

19  workplace is not elevated, but that her long-term risk of further physical altercations in the

20  workplace is mildly increased over that of the average employee. (Supp. Baumgardner Decl., Ex.

21  A.) The evaluator also noted that because she was unwilling to take responsibility for prior

22  incidents, counseling would not likely reduce the risk of future incidents. (Id.)  Even if the

23  termination had been related to a perceived threat, it is not clear that the evaluation would have

24  altered the Union's decision not to pursue the grievance.

25       For these reasons, Plaintiff has failed to raise an issue of material fact regarding whether

26  the Union acted arbitrarily when it decided not to grieve her termination.

27

ORDER — 10

**Conclusion**

Plaintiff's duty of fair representation claim against the Union is barred by the applicable statute of limitations.  Plaintiff has failed to adequately allege all elements of her claim, and cannot amend her pleadings now.  And Plaintiff's claim fails on the merits.  For all these reasons, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's single remaining claim for relief.

The clerk is directed to send copies of this order to all counsel of record.

Dated: June 5, 2008.


Marsha J. Pechman
United States District Judge

ORDER — 11